UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AMBER NICOLE BRADSHAW,

      Plaintiff,

v.                                                                                  Case No. 1:19-cv-696
                                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of February 19, 2013.  PageID.39.  Plaintiff identified her disabling condition as seizures, which she has experienced since 2011.  PageID.192, 203.  Prior to applying for DIB and SSI, plaintiff completed the 12th grade.  PageID.193.  While plaintiff stated that she worked part-time as a cashier, the ALJ determined that she had no past relevant work for purposes of her disability claims.  PageID.47, 193.  The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 25, 2018.  PageID.39-48.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.        LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed

a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 19, 2013, and that she met the insured status of the Social Security Act through December 31, 2018. PageID.41.  At the second step, the ALJ found that plaintiff had the severe impairment of epilepsy. *Id.*  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.43.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could never climb ladders, ropes, or scaffolds. She could never be exposed to hazards such as moving machinery and unprotected heights.

PageID.43.  The ALJ also found that plaintiff "has no past relevant work."  PageID.47.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy.  PageID.47-48.  Specifically, the ALJ found that plaintiff could perform the requirements of unskilled work in the national economy such as industrial cleaner (664,000 jobs), kitchen helper (146,000 jobs), and linen room attendant (100,000 jobs).  PageID.48.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 19, 2013 (the alleged onset date) through October 25, 2018 (the date of the decision).  *Id.*

### III.    DISCUSSION

Plaintiff's counsel did not set out a statement of errors as directed by the Court.[1]

However, the Court will address the two arguments developed in plaintiff's brief.

### A.    The Commissioner erred in failing to address and analyze the listings of impairments as required by law.

Plaintiff contends that the ALJ failed to address and analyze her severe impairment

at step three of the sequential process.   Specifically, plaintiff contends that she meets the

requirements of Listing 11.02 (Epilepsy), which provides as follows:

11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

A.    Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

B.    Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

C.    Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or

    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

    3. Interacting with others (see 11.00G3b(ii)); or

    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

    5. Adapting or managing oneself (see 11.00G3b(iv)); or

D.    Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

---

[1] *See* Notice (ECF No. 8).

1. Physical functioning (see 11.00G3a); or

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.02, 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

"[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§404.1525(d) and 416.925(d).

Contrary to plaintiff's claim, the ALJ addressed her condition and found that she did not meet or equal a listed impairment, including Listing 11.02:

Individually, or in combination, the medical evidence does not document impairments of listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually, or in combination. I have evaluated the signs, symptoms, and laboratory findings of claimant's severe impairments, finding that they do not meet or medically equal in severity or duration the criteria listings of 11.02 or any other listing.

PageID.43.

While the regulations do not require an ALJ to address every listing, the ALJ should discuss a listing if the record raises a "substantial question" as to whether the claimant could qualify as disabled under that listing. *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). As discussed, the ALJ identified Listing 11.02, and determined that plaintiff did not meet the requirements of that listing. In contesting an ALJ's evaluation of a listing, a claimant such as plaintiff "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id*. Here, plaintiff's claim fails because she does not demonstrate how her condition meets the requirements of paragraph A, B, C, or D of Listing 11.02. *See Smith-Johnson*, 579 Fed. Appx. at 432. Accordingly, plaintiff's claim of error will be denied.

> **B.     The Commissioner failed to properly conduct a vocational analysis of this particular claimant's limitations imposed by the severe epilepsy and resulting impairment found to exist.**

Plaintiff contends that the ALJ erred by failing to include the frequency of her seizures in the hypothetical question. In this regard, plaintiff stated that "there was no effort whatsoever by the [ALJ] to evaluate the frequency of the seizures suffered by the claimant for purposes of the vocational testimony." Plaintiff's Brief (ECF No. 12, PageID.632).

> **1.     The ALJ's evaluation of plaintiff's seizures**

While the ALJ addressed the plaintiff's medical history of seizures in determining her residual functional capacity (RFC), he did not make explicit findings with respect to the

7

frequency or types of seizures.[2] The ALJ recounted plaintiff's testimony regarding the frequency

and types of seizures as follows:

> In her Function Report, claimant said she was unable to work due to her seizures.  She reported difficulty with walking, kneeling, talking, hearing, seeing, memory, concentration, and using her hands. She said she could not drive. She reported drowsiness as a side effect of her seizure medication. She alleged that doing even a simple chore such as washing dishes made her tired. However, she said she could pay bills, shop, cook, clean, do laundry, and vacuum.  She reported no problem performing her own personal care (Exhibit 4E).

> At the hearing, claimant testified to having both grand mal and petit mal seizures. She said she had three grand mal seizures while she was still working. She reported having about three grand mal seizures per month and petit mal seizures every day. She said if she was standing up when a larger seizure started, she would fall down. She said she was not always aware that she was having a seizure. She reported her seizures lasted anywhere from 5-30 minutes. She said she would feel tired and groggy after a seizure and had trouble concentrating (Hearing testimony).

PageID.44.  However, the ALJ concluded that "the objective findings in this case are not fully

consistent with claimant's allegations and do not specifically support the existence of the

limitations reported above."  *Id*.

To support his conclusion, the ALJ identified the following seizure activity.  In

February 2013, plaintiff was admitted to the hospital after having a seizure.  PageID.44.  A few

months later, in June 2013, plaintiff was again admitted for a seizure.  *Id*.  At this time, "[h]er EEG

was abnormal, showing left temporal sharp waves indicating an increased risk for partial onset and

secondarily generalized seizures."  *Id*.

In September and November 2014, plaintiff went to the emergency room after

having seizures at work.  PageID.45. She also tested positive for marijuana.  *Id*.

---

[2] It is unclear why the ALJ's decision did not make explicit findings, because he had to determine the frequency and type of seizure in finding that plaintiff did not meet the requirements of Listing 11.02.

In April 2015, plaintiff reported the November seizure to her doctor.  PageID.305.
The doctor identified plaintiff as having a seizure disorder, noting that she had two breakthrough
seizures despite having a good therapeutic level of medication.  PageID.307.

In August 2015, plaintiff reported no seizure activity associated with generalized
body movements and loss of consciousness since her last appointment in April 2015.  PageID.300.
However, plaintiff reported three episodes of staring spells and a rhythmic movement of her
thumb, each lasing about two minutes which last occurred a month ago.  *Id.*  Plaintiff also reported
episodes of confusion at work and difficulty focusing to complete a task at hand as a cashier.  *Id.*
Plaintiff's treating physician, Dr. Hollist, advised her to refrain from driving for six months after
a seizure and "avoid engaging in his risk activities such as using power tools, climbing ladders,
operating heavy machinery etc." PageID.302. The doctor also recommended that plaintiff
discontinue using marijuana "as this could be contributing to confusion at work."  *Id.*

In February 2016, plaintiff reported seizure activity involving episodes of staring
spells with rhythmic movement of her thumb or smacking movements of her mouth.  PageID.295.
The seizures last 1 to 3 minutes, followed by a period of confusion.  *Id.*  Plaintiff's boyfriend noted
that thumb movements at least once per week.  *Id.*  Again, Dr. Hollist advised plaintiff to refrain
from driving for six months, and "[a]void engaging in his risk activities such as using power tools,
climbing ladders, operating heavy machinery etc.," and to discontinue using marijuana.
PageID.297.

In July 2016, plaintiff went to the emergency room after suffering a seizure while
playing pinball at a bar.  PageID.45.  At that time, plaintiff reported having a seizure every five or
six months, and tested positive for marijuana.  PageID.45, 367.

In January 2017, plaintiff was seen in the emergency room after a seizure, when her boyfriend reported "hearing a loud bang upstairs" and finding plaintiff on the bathroom floor. PageID.45.

While the frequency of plaintiff's seizures varied, her neurologist noted in March 2017 that the "[s]eizures seemed to be currently under control, but not enough time to deem well controlled." PageID.45, 447.

In evaluating plaintiff's condition, the ALJ pointed out that plaintiff was not always compliant with her doctor's recommendations. She admitted to non-compliance with her seizure medication. PageID.46. The ALJ also pointed out that plaintiff continued to use marijuana despite the clear recommendation from her doctor that she stop. *Id*. When the ALJ asked plaintiff how often she smokes marijuana, she stated, "I take a couple hits off of my pipe every night to help me fall asleep." PageID.64.

As to the opinion evidence, the ALJ noted that plaintiff's neurologist, Mary Hollist D.O., instructed her to avoid driving for six months after a seizure and that she should avoid engaging in high risk activities such as using power tools, climbing ladders, and operating heavy machinery. PageID.46. In addition, non-examining DDS medical consultant David Mika, D.O. found that plaintiff's seizures were not of listing severity and that while plaintiff could perform work at all exertional levels, she should "Avoid ALL HAZARDS due to seizure disorder." PageID.46; PageID.80-88 (emphasis in original).

With respect to non-medical evidence, the ALJ noted that plaintiff continued to work after the alleged onset date and collected unemployment during the third quarter of 2015. PageID.46. The ALJ pointed out that plaintiff made contradictory claims regarding her ability to work to different governmental agencies, certifying to one agency that she was able to work to

10

receive monetary benefits and certifying to another agency that she was disabled "in an effort to receive monetary benefits." *Id.* While the ALJ found that these contradictory certifications eroded the persuasiveness of plaintiff's claim that she cannot work, the Court notes that the ALJ also found that plaintiff's meager work history amounted to "no past relevant work" in the context of an application for Social Security benefits. PageID.47.

Finally, the ALJ gave "some weight" to the testimony of plaintiff's boyfriend, Mr. May, that plaintiff has two types of seizures. PageID.47. In one type of seizure, plaintiff would fall and "flop" on the floor; this happened anywhere from two times per month to once a week and lasted 10 to 30 minutes. *Id.* In the other type of seizure, plaintiff would stare into space and drop anything she was holding; this happened anywhere from one to three times a week and lasted 5 to 15 minutes. *Id.* Mr. May testified that he took plaintiff to the emergency room for a seizure once, when she a seizure that lasted about 45 minutes and she hit her head. *Id.*

### 2. The VE's evidence

Plaintiff contends that the ALJ's evaluation of the vocational evidence is flawed, because the ALJ's hypothetical questions failed to address "the occurrence of seizures." Plaintiff's Brief (ECF No. 12, PageID.633). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.

11

The ALJ's hypothetical question posed to the VE included the limitations set forth in the RFC. PageID.65. While the ALJ rejected plaintiff's testimony regarding the alleged frequency of seizures, he did not address the frequency of the seizures in developing the RFC or in the hypothetical question posed to the VE. The only vocational evidence regarding the impact of frequent seizures arose from a question posed by plaintiff's attorney to the VE:

> Q. Assuming the frequency of two or three of the large seizures and perhaps a couple of the smaller seizures in a week would the amount of time or frequency described if they happened during an employment setting be problematic for competitive employment?
>
> A. Based on my professional experience and being on work floors and working with employers who have hired individuals I've worked with with [sic] seizure conditions, if an individual were having seizures to that degree that would be problematic on most work settings.

PageID.77.

Plaintiff contends that she is disabled based on the VE's testimony. Contrary to plaintiff's contention, the VE did not testify "that seizures at the frequency suffered by the claimant would preclude employment activity." Plaintiff's Brief at PageID.632. Rather, the VE testified that plaintiff's alleged frequency of seizures "would be problematic on most work settings." PageID.77. Nevertheless, plaintiff has pointed out a valid question of work limitations posed by the frequency of her seizures, *i.e.*, the extent to which her seizure activity was "problematic."

Defendant rejects the relevance of "frequency of seizures" in considering whether other work exists in the national economy that plaintiff can perform. Defendant contends that the ALJ is not required to include unsubstantiated limitations in a hypothetical question regarding the alleged frequency of a claimant's seizures, citing *Springett v. Commissioner of Social Security*, No. 1:15-cv-998, 2017 WL 1044787 at *9 (W.D. Mich. March 20, 2017). *See* Defendant's Brief (ECF No. 13, PageID.652-653). It is undisputed that a hypothetical question posed by an ALJ must

accurately portray a claimant's physical and mental limitations. *See Webb*, 368 F.3d at 632.

However, defendant's reliance on *Springett* is misplaced. In *Springett* the ALJ did not include

limitations in the hypothetical question regarding the frequency of seizures because "the ALJ

found the record did not support both Plaintiff's and his spouse's reports of the frequency of his

seizures." *Springett*, 2017 WL 1044787 at *9. In this regard, the ALJ found that while the

claimant (Springett) experienced a few breakthrough seizures over the past couple of years,

claimant admitted that the grand mal seizures were well controlled and the record revealed only

minimal medication side-effects. *Id*. at *6.

Here, plaintiff has a documented history of seizures requiring hospital visits and

emergency care since 2013. Plaintiff was admitted to the hospital in February 2013 and June 2013

after having seizures. PageID.44. Plaintiff presented to the emergency room after having seizures

at work in September 2014 and November 2014, and while playing pinball in July 2016.

PageID.45. During a three-day Epilepsy Monitoring Unit observation in August 2016, a video

EEG captured two events consistent with left temporal lobe epilepsy. *Id*. In January 2017, Mr.

May took plaintiff to the hospital after hearing a loud bang and finding her on the bathroom floor.

*Id*. In sum, plaintiff's seizures resulted in two hospital admissions and four emergency room visits

between February 2013 and January 2017. Given this medical history, it is not surprising to the

Court that plaintiff has no past relevant work for purposes of her disability claim.[3]

Based on this record, the Court concludes that the hypothetical question posed by

the ALJ was flawed because it failed to address the frequency and types of plaintiff's seizures.

---

[3] The Court notes that plaintiff's earnings record indicates that from 2007 through 2017, she earned $40,814.53 spread out over 8 years, and that she did not have any earnings in 2008, 2016 and 2017. PageID.189. Plaintiff identified her most recent past employment as a part-time cashier at Dollar General, working 4 hours per day, 4 days per week. PageID.193.

The VE's testimony established that the frequency and type of seizure is an independent consideration in evaluating work available to a claimant who experiences seizures. Specifically, a person who had "two or three of the large seizures and perhaps a couple of the smaller seizures in a week" would be "problematic on most work settings." Here, the "problems" caused by plaintiff's seizures involve either (1) falling down, or (2) staring into space and dropping things. To use the VE's terminology, when does "problematic" become work preclusive?

Based on this record, the Court concludes that the ALJ erred by failing to obtain vocational evidence as to how the frequency of plaintiff's seizures affect her ability to perform other work in the national economy. The ALJ's decision is not supported by substantial evidence and will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to evaluate the frequency of plaintiff's seizures, evaluate how the seizures affect her ability to perform other work in the national economy, and, if appropriate, revise the RFC. A judgment consistent with this opinion will be issued forthwith.

Dated: September 23, 2020                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge